**CONSOLIDATED GRAIN AND BARGE COMPANY, a corporation, Appellant-Cross Appellee,**

v.

**ARCHWAY FLEETING & HARBOR SERVICE, INC., a corporation, Appellee-Cross Appellant.**

**Nos. 82–1764, 82–1839.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1983.

Decided Aug. 2, 1983.

James W. Herron, Francis E. Pennington, III, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for appellant-cross appellee.

Joseph A. Murphy, Donald B. Balfour, Lucas & Murphy, P.C., St. Louis, Mo., for appellee-cross appellant.

Before LAY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

PER CURIAM.

Ten barges broke away while being transported from the Illinois to the Missouri side of the Mississippi River, and caused damages aggregating $168,000. At issue in this appeal is the respective liability of Consolidated Grain and Barge Company, the owner of the barges involved in the breakaway, and Archway Fleeting and Harbor Service, Inc., the owner and operator of the M/V John F. Walker and the M/V Katie, the harbor boats towing the barges. The district court[1] found Archway and Consolidated were equally at fault. Consolidated was liable because the timberhead broke on one of its barges and Archway was liable due to the negligent operation of its harbor boats. The court found Archway liable to Consolidated for one-half of Consolidated's damages. Consolidated and Archway both appeal, each claiming that the findings of the district court are clearly erroneous and that the other is solely liable. Consolidated also argues that it is entitled to prejudgment interest on its judgment against Archway. We affirm the judgment of the district court as to the liability of Consolidated and Archway, but reverse and remand with respect to Consolidated's claim for interest.

Ten barges had been moved from the Missouri bank to the Illinois bank of the Mississippi River by the two harbor boats. They were assembled into a single tow for movement back to the fleet on the Missouri side of the river. There were three strings in the tow, the starboard and center strings being four long and the port string having two barges. The tow was three barges wide at its head and second tier. The M/V John F. Walker was faced up to the Jackie 21, the sternmost barge of the starboard string. Face wires from the M/V John F.

---

1. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri.

Walker were firmly attached to the deck fittings of the Jackie 21. The M/V Katie was positioned against the box end of the sternmost barge of the center string, but was not wired to the tow because it lacked lower tow knees. There was evidence that the tow was proceeding across the river at approximately an 11:00 o'clock angle into the current. As the tow neared the MacArthur Bridge, swift current began pushing the head of the tow farther to port than desired. Upon application of full starboard rudder to correct this problem, the timberhead on the Jackie 21 barge broke. The barges then broke loose, colliding with and damaging property downstream. The facts are further explained in detail in the district court's opinion, *Eagle Marine Industries, Inc. v. Valley Line Co.*, 541 F.Supp. 297 (E.D.Mo.1982).

■ Charles Lewis, the pilot of the M/V John F. Walker, testified that had the harbor boat not lost its starboard face wire to the tow, he would have been able to straighten the tow into the current. Pilot Jack Bell, aboard another vessel some 1,200 feet from the tow, testified that once the M/V Walker lost its face wire it was impossible for it to control the tow and to prevent it from being topped around by the current. The collision then became inevitable. Lewis, however, also testified that he may not have applied full starboard rudder until the tow was at an angle of 10 o'clock, although he was unsure of his exact position. Edgar Allen Poe, an expert witness for Consolidated, testified that at an angle of 10 o'clock a collision would have occurred whether the deck fittings on the Jackie 21 failed or not. This conflicting evidence was for the trier of fact to weigh. We cannot conclude that the finding of the district court, that when the timberhead fractured (but not prior thereto) a breakaway and collision were inevitable, is clearly erroneous.

■ Archway argues that the court's finding that the navigation of the tow was a proximate cause of the breakaway is clearly erroneous. The evidence showed that maneuvering capabilities were diminished because (1) the M/V John F. Walker was positioned behind the starboard string of the tow rather than the center string and (2) the M/V Katie was positioned behind the center string rather than along the port side of the tow and was without lower tow knees. The evidence also showed that the tow topped to port and dropped faster than Lewis anticipated, forcing him to take the emergency action which resulted in the timberhead breaking. Captains Lewis and Bell agreed that the positioning of the M/V John F. Walker on the starboard rather than the center string reduced the ability to maneuver and control the tow. Again the conflicting evidence was for the district court to weigh and we cannot conclude that its findings on negligence and causation are clearly erroneous.

■ Consolidated argues that the district court's finding that Archway and Consolidated were equally at fault violates the ruling in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), which requires that liability for damages be "allocated among the parties proportionately to the comparative degree of their fault." *Id.* at 411, 95 S.Ct. at 1715. We conclude that the district court's finding is consistent with this comparative fault rule.

■ Consolidated also argues that the district court failed to award interest on its judgment against Archway from October 19, 1981 at the rate of 10% per annum pursuant to a stipulation entered between the parties. We have in many cases followed stipulations entered into by the parties. In *Fenix v. Finch,* 436 F.2d 831 (8th Cir.1971), we said, "It is well settled that stipulations of fact fairly entered into are controlling and conclusive and courts are bound to enforce them." *Id.* at 837. *See also Farmers Co-op. Elevator Ass'n. v. Strand,* 382 F.2d 224, 237 (8th Cir.1967), and *United States v. 3788.16 Acres of Land,* 439 F.2d 291, 294–5 (8th Cir.1971). In *Grinder v. Southern Farm Bureau Cas. Ins. Co.,* 590 F.2d 741, 744 (8th Cir.1979), we recognized the binding effect of a stipulation as to the amount of damages. The stipulation in question was an agreement between par-

ties, each of which was seeking damages against the other, that a specified amount of interest was to be awarded if liability were found. There is no showing that either party sought relief from the stipulation in district court, or that the district court on its own motion considered and rejected the stipulation. Furthermore, the stipulation is in accord with the general rule in admiralty cases that prejudgment interest should be awarded absent exceptional circumstances. *See Federal Barge Lines, Inc. v. Republic Marine, Inc.,* 616 F.2d 372, 373 (8th Cir.1980); *Mid-America Transportation Co. v. Rose Barge Line, Inc.,* 477 F.2d 914, 916 (8th Cir.1973); *General Facilities, Inc. v. National Marine Service, Inc.,* 664 F.2d 672, 674 (8th Cir.1981). We conclude that the district court erred in failing to follow the stipulation of the parties with respect to interest.

Having carefully considered all of the arguments of the parties, we affirm the judgment of the district court with respect to the liability of Consolidated and Archway and the conclusion that the two were equally at fault. We reverse and remand with directions to enter judgment in favor of Consolidated for the interest called for in the stipulation of the parties.