**J.C. SIMS, Appellant,**

v.

**Donald WYRICK, Warden, Ewing D. Gourley, and Joseph R. Keene, Appellees.**

**No. 83–2117.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1984.

Decided Sept. 10, 1984.

Shook, Hardy & Bacon, Andrew See, Kansas City, Mo., for appellant.

John Ashcroft, Atty. Gen., Kelly Mescher, Asst. Atty. Gen., Jefferson City, Mo., for appellees.

Before LAY, Chief Judge, ARNOLD, Circuit Judge, and DUMBAULD,* Senior District Judge.

ARNOLD, Circuit Judge.

The plaintiff, an inmate in the Missouri State Penitentiary (MSP), filed this action under 42 U.S.C. § 1983, charging that the defendant prison officials violated his First Amendment and due-process rights because they confiscated and destroyed a transcript of an interview about the Black Panther Party which belonged to him. The District Court[1] dismissed plaintiff's claim for damages. Plaintiff appeals, claiming that his document was taken from him in accordance with a policy of the Missouri prison system absolutely banning any literature concerning the Black Panther Party. It is common ground among the parties that such a policy, if in fact it existed, would sweep too broadly to survive scrutiny under the First Amendment. A pretrial stipulation agreed to by both sides stated that such a policy was indeed in effect, but the District Court set the stipulation aside and found as a fact that there had been no such absolute policy. Although we agree with plaintiff that it was error to set aside the stipulation under the facts of this case, we nevertheless affirm the dismissal of his claim for damages, because here there was simply no causal connection between the allegedly unconstitutional policy and the loss of plaintiff's document.

---

* The Hon. Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

1. The Hon. Richard H. Ralston, United States Magistrate for the Western District of Missouri, heard this case by agreement of the parties under 28 U.S.C. § 636(c).

## I.

In 1976, a college journalism student interviewed Sims at MSP about his involvement in the Black Panther Party. (Before he went to prison, Sims had been a high official in the Party, but apparently his connections had been severed by the time of the interview.) In December 1976, Sims received in the mail a transcript of the interview. After a few days, plaintiff mailed the transcript to his sister-in-law for her to read. On or about April 5, 1977, she sent it back to Sims.

The defendant Joseph R. Keene was mail-room supervisor at the time. He testified at trial that he recalled receiving a document addressed to Sims, in an envelope that also contained a covering letter. He stated that he placed the document on the right side of his desk and did not permit it to be delivered to Sims, because "it was something that I felt might be detrimental to the security of the institution." Tr. 58. Keene testified that he intended to read the document later and then determine finally whether it should be withheld. He sent the envelope and the enclosed letter on to Sims without any explanation about the disposition of the transcript, even though a prison policy at the time required that inmates be informed when material addressed to them was withheld. Sims noticed at once that the transcript was missing, and on April 8, he wrote to Keene and requested that the transcript be returned to him. Later that month, Keene responded by sending Sims a note stating: "If it was the same piece of paper the counselor [this is apparently a reference to a prison caseworker] was inquiring about, I'm sorry it got mislayed [sic]." Plaintiff's Exhibit (PX) 9, App. 184. According to the Magistrate's findings of fact, the document had been missing when Keene came to work on April 6, and had "disappeared as the result of either inadvertent loss or theft by another." Brief for Appellant 14a.

Sims filed a grievance, which was upheld. The warden, defendant Donald Wyrick, ordered a caseworker to try to obtain another copy of the transcript for Sims, but the student who had conducted the interview could not be found, and the transcript could not be replaced. In 1980, Sims brought this action under § 1983 claiming violation of his First Amendment and due-process rights.

In May of 1982, after discovery, including three depositions, had been completed, the parties filed a stipulation stating among other things that:

> The policy in effect at the Missouri State Penitentiary in April, 1977 and now in effect prohibits inmates from receiving through the mails literature or other written material concerning the Black Panther Party.

App. 147. This stipulation was reaffirmed in a pretrial order signed by counsel for both sides shortly before trial, App. 150, and counsel for plaintiff read it into evidence at the beginning of the trial, without protest from the defense.

After first testifying that there was a policy of banning absolutely any literature concerning the Black Panthers, Keene then changed his testimony and stated that there was no such *per se* rule, that in fact Black Panther literature was examined on a case-by-case basis and excluded from the prison only if it tended to incite violence or disorder. Warden Wyrick corroborated Keene's new version of prison mail policy. At the close of the trial the Magistrate called the parties' attention to this contradiction between the stipulation and some of the defendants' evidence. He called for post-trial briefs on this issue and, after considering them, decided to disregard the stipulation on the ground that the evidence contrary to it was substantial. He then found as a fact that no such blanket *per se* policy had ever been in effect.[2] Instead, according to the Magistrate, the policy in effect in 1977 was simply to screen out any

---

**2.** The Magistrate observed, Brief for Appellant 8a, that "[t]he enforcement of an institutional mail policy which bans *all* literature or written material concerning the Black Panther Party would clearly be too broad in its scope ...." No one contests the correctness of this statement of law, and it is not in issue on this appeal.

materials that might "promote violence or disorder." This policy, the District Court held, was invalid for overbreadth and needed to be narrowed and refined, but in 1977, the court went on, a reasonable prison administrator would not have known that such a policy violated any clearly established constitutional rights, so enforcement of the policy could not give rise to an action for damages.[3] Accordingly, plaintiff's claim for damages based on an alleged violation of the First Amendment was dismissed. As to the due-process claim, the Magistrate held that the defendant Keene had not actually deprived plaintiff of any property. He had simply laid the document aside temporarily in order to examine it later. The loss of the document was the result, not of any deprivation imposed upon plaintiff by defendants, but simply of inadvertence or theft by some third person. (Inmates work in the mail room on occasion.)

Plaintiff now appeals, arguing that the stipulation should not have been set aside, that the case must be decided on the premise that a *per se* anti-Black Panther policy was in effect in 1977, that such a policy was clearly unconstitutional at the time, and that he is therefore entitled to an award of compensatory damages.

## II.

We have consistently held that stipulations of fact fairly entered into are controlling and conclusive, and that relief from such stipulations will be granted only under exceptional circumstances. *E.g., Consolidated Grain & Barge Co. v. Archway Fleeting & Harbor Service, Inc.,* 712 F.2d 1287, 1289 (8th Cir.1983) (per curiam); *Kealy v. Harter,* 682 F.2d 198, 201 (8th Cir. 1982) (per curiam); *United States v. 3,788.-16 Acres of Land,* 439 F.2d 291, 294–95 (8th Cir.1971); *Fenix v. Finch,* 436 F.2d 831, 837 (8th Cir.1971). The Magistrate acknowledged this general rule, but relied

on a Fifth Circuit case to justify his decision to relieve the defendants of the effect of their stipulation. *Loftin & Woodard, Inc. v. United States,* 577 F.2d 1206, 1232 (5th Cir.1978). In *Loftin,* the court stated in dictum that "the district court was entitled to disregard the stipulation if to accept it would have been manifestly unjust or if the evidence contrary to the stipulation was substantial." *Ibid.* We see no suggestion of manifest injustice, here, and we cannot accept the suggestion that a stipulation may be disregarded whenever substantial evidence contradicting it is introduced. Indeed, if substantial evidence contrary to a stipulation were all that was required to disregard it, the purpose of stipulations would be severely undercut. The usual purpose of a stipulation is to reduce the proof needed at trial and to narrow the focus of the parties' efforts. If a party could be relieved of a stipulation on a mere showing of substantial contrary evidence, litigants could not rely on stipulations of fact and would have to be fully prepared to put on their proof.

█ Here, there is no claim of fraud or unfairness. The stipulation was agreed to after discovery had been completed. At the time defendants agreed to it, it was entirely consistent with, if not compelled by, the defendant Keene's deposition testimony. The stipulation was reaffirmed both in the pretrial order and at the beginning of the trial itself. Counsel for plaintiff came to the trial believing that the stipulation was still good, and in fact defendants never actually made a formal motion to be relieved from it. If such a motion had been made and granted in advance of trial, with ample opportunity for plaintiff to conduct additional discovery or change his strategy appropriately, an entirely different case would be presented. Nor is this a case in which the stipulation is flatly contrary to all of the evidence on the subject it covers. Not only is it consistent with Keene's deposition, as we have just

---

**3.** The District Court did direct defendants to amend their regulations to state more precisely the kind of literature that would be excluded. Defendants initially appealed from this order,

but this appeal has been abandoned, and the District Court's holding on this point is not before us.

noted, but Keene's own trial testimony at first was to the same effect. We conclude that the reason given by the District Court for allowing defendants to avoid the stipulation was insufficient, and that plaintiff is entitled to its benefit. We therefore take the case on the assumption that there was in effect in 1977 a policy flatly banning all written material referring to the Black Panther Party.[4]

■ It does not follow, however, that plaintiff is entitled to damages. Only if the unconstitutional policy, now deemed established by the stipulation, was the proximate cause of the loss of the transcript, would the claim for damages be good. Here the particular facts of this case, as found by the Magistrate, are an obstacle to plaintiff's theory of recovery. The stipulation establishes only what MSP's policy was at the relevant time. It does not establish that the policy was enforced, either generally or in April of 1977 when plaintiff's transcript arrived back at MSP. In fact, according to the Magistrate's findings, the policy was not enforced with respect to the transcript. That is, the transcript was not automatically confiscated as soon as someone noticed that it contained some reference to the Black Panthers. Instead, Keene laid the transcript aside, intending to read it later on in order to determine whether it fell within the prohibition on materials that promoted violence or disorder. This further examination never took place, because when Keene arrived in the prison mail room the next day, the transcript was gone, having disappeared, according to the Magistrate's findings, "as the result of either inadvertent loss or theft by another." Brief for Appellant 14a. In other words, it was not a ban on all Black Panther literature, without distinction, that initiated the process that led to the loss of the transcript. It was instead

Keene's effort to enforce the policy against writings that might incite violence, efforts that the District Court has held were not clearly contrary to the First Amendment as it then appeared to reasonable prison officials. What we have here, in other words, is the loss of a transcript, occurring in the course of prison officials' reasonable execution of a policy they believed lawful, and attributable not to any deliberate act of the defendants, but rather to simple negligence or theft by someone unknown.

Plaintiff contends that the District Court's finding that the loss occurred through negligence or theft is clearly erroneous, but we disagree. This finding is an entirely permissible inference from Keene's testimony that he laid the document aside to examine it later, and that it was missing the next day when he returned to work. True, there is some evidence to the contrary, notably a letter signed by a Human Relations Officer employed by the Missouri Division of Corrections, PX 14, App. 186, stating that "the transcript of [the] ... interview was confiscated and destroyed," but the District Court was not required to credit this evidence, and may have chosen not to do so because of its apparent hearsay nature. In short, this is a case, regrettable to be sure, of a mislaid document, and not of violation of the Constitution of the United States. Even if a violation of the First Amendment, or of the Due Process Clause of the Fourteenth Amendment did occur, that violation was not the proximate cause of plaintiff's loss.

### III.

From time to time we call on lawyers to serve indigent clients, often inmates of prisons, who have actions for damages or injunctive relief under 42 U.S.C. § 1983. A few lawyers complain about the imposition on their time. Most do not. In fact, the

---

4. The stipulation also establishes that this same policy remained in effect at the time of the trial. This aspect of the stipulation, of course, is irrelevant to plaintiff's claim for damages, which depends entirely on the state of affairs obtaining at the time the transcript was withheld. Whether or not there is such a policy at present

would be relevant to a claim for declaratory or injunctive relief, but the District Court has in effect held for plaintiff on such a claim, because its opinion states that a policy banning all written material concerning the Black Panther Party is contrary to the First Amendment.

vast majority of lawyers called upon to render this kind of service do so competently and cheerfully, and thus conduct themselves in the highest traditions of a bar that is committed to public service. We try to reimburse appointed counsel for their out-of-pocket expenses, using a fund derived from admissions fees paid by members of our bar, but can of course pay no fees to lawyers in civil cases, and they receive none, except in those instances, rare as a practical matter, when their client prevails. We take this opportunity to thank the bar in general, as well as counsel for plaintiff in this particular case, for this exemplary service.

Counsel for plaintiff was appointed by the District Court and has continued to serve his client on this appeal. At the conclusion of the trial, the magistrate said to counsel for plaintiff:

> Your pre-trial brief is very thorough and very good. You've done a good job today for your client, probably done more for your client today than most lawyers appointed in a civil rights case, and it pleases me greatly to see those kinds of efforts. Sometimes it is difficult for practicing attorneys to put that kind of time in.

Tr. 137. We endorse this statement.

### IV.

For the reasons stated in this opinion, the judgment of the District Court, dismissing plaintiff's claim for damages, is

Affirmed.