CHEMICAL LEAMAN TANK
LINES, INC., Plaintiff,

v.

THE AETNA CASUALTY & SURETY,
Robin Anthony Gildart Jackson, In-
surance Company Ltd., An Underwrit-
er at Lloyd's London, et al., Defen-
dants.

Civil Action No. 89–1543(SSB).

United States District Court,
D. New Jersey.

Oct. 14, 1999.

J. Llewellyn Mathews, Steven D. Weinstein, Blank Rome Comisky & McCauley LLP, Cherry Hill, NJ, John Dean, Kevin Clark, Wilkie Farr & Gallagher, Washington, DC, for Chemical Leaman Tank Lines, Inc.

Henry Lee, Mendes & Mount, LLP, Los Angeles, CA, William S. Wachenfeld, Mendes & Mount, LLP, Newark, NJ, for Robin Anthony Gildart Jackson, an Underwriter at Lloyd's, London and Certain London Market Ins. Companies.

## OPINION ON MOTION REGARDING THE 1977–80 POLICIES

BROTMAN, District Judge.

Before this Court is plaintiff Chemical Leaman Tank Lines, Inc.'s motion regarding the 1977–80 policies. Specifically, the plaintiff asks this Court to enforce its August 10th 1992 Stipulation and Order, which provides, in pertinent part, that Walbrook Insurance Company Ltd. is liable for a 19.05% share of the first 80% of coverage under excess policy number 77–3833–19.[1]

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 10th, 1992, this Court approved and entered a stipulation between plaintiff Chemical Leaman Tank Lines, Inc. ("Chemical Leaman") and defendant London Market Insurers ("LMI") which identified the applicable insurers and their relative percentages of coverage liability under the various policies at issue in the upcoming jury trial. See August 10th 1992 Stipulation and Order at 10. The stipulation identified a page stamped "X1186" as an amendment determinative of the parties rights with respect to policy number 77–3833–19. See id.

Page X1186 provided, in pertinent part, that Walbrook Insurance Company Ltd. ("Walbrook") would be liable for a 19.05 % share of the first 80% of coverage under the policy. See Decl. of John P. Dean Ex. 3. At trial Chemical Leaman offered into evidence, without objection from LMI, the documents stipulated to as policy 77–383319. See Pl.['s] Br. at 3–4. Included within these submissions was page X1186. See Pl.['s] Br. at 3. Following the trial, this Court entered a judgement declaring LMI liable in accordance with the policy limits set forth in the stipulation. On appeal, the Third Circuit affirmed the Court's liability determinations, but remanded for further allocation proceedings unrelated to the issue in the instant motion.[2]

---

1. Plaintiff labeled the instant motion a motion for summary judgement. However, since the issues raised in the motion were decided in the previous trial and are not before this Court on remand, the Court has determined that the motion is not a motion for summary judgement, but rather a motion to enforce a stipulation. Thus, the Court will treat the motion as such.

2. See *Chemical Leaman Tank Lines, Inc. v. The Aetna Casualty and Surety Company*, 89

F.3d 976, 997(3d Cir.1996)(remanding for reallocation among insurers in accordance with recent New Jersey decision in *Owens–Illinois, Inc. v. United Ins. Co.*, 138 N.J. 437, 650 A.2d 974 (1994)). The following is a list of issues on remand: First, whether or not LMI and other excess insurers have rebutted the *Fairclough* presumption; Second, the allocation of all indemnity costs on the updated record as between soil, groundwater, and wetlands; Third, after determining the total past indemnity costs for each medium, the

Over four years after the initial jury determination, during an October 1997 settlement conference with Magistrate Judge Rosen, counsel for LMI asserted that the subscribers for policy 77–3833–19 were not determined by X1186, but rather by "endorsement 17," a document that was not included in the 1992 stipulation. *See* Pl.['s] Br. at 4–5. The defendant contended that endorsement 17 amended X1186 by providing that Walbrook would assume 80% of the liability risk, not the 15.24% [3] prescribed by the stipulation. *See* Decl. of Henry Lee Ex. A.; *see also* Def.['s] Br. at 6; Decl. of John P. Dean Ex. 5.

The issue of endorsement 17's validity has taken on critical importance since Walbrook, the London insurer whose liability percentage was significantly increased, has become insolvent. *See* Pl.['s] Br. at 5. While the London Market Insurers acknowledge that endorsement 17 was in their possession prior to the agreement, LMI claims that the document was inadvertently omitted from the stipulation. *See* Lee Decl. at ¶ 4; Def.['s] Br. at 6. The excess insurers contend that they were first alerted to the omission by the instant motion, and that relief would have been promptly sought had they been informed sooner. *See* Def.['s] Br. at 14. Although LMI does not dispute endorsement 17's absence from the stipulation, it opposes Chemical Leaman's motion on two grounds: 1) the defendant argues that the express language of the stipulation allows for post-trial modification; and 2) LMI alternatively contends that enforcement of the stipulation would result in "manifest injustice" since the modification allegedly

occurred at the behest of agents for Chemical Leaman.

## II. DISCUSSION

### A. MANIFEST INJUSTICE

■ As a general rule, absent an express limitation or a clear manifestation of intent to the contrary, pretrial stipulations remain binding between parties during subsequent proceedings. *See Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir.1998). Courts have, however, allowed for modification in "exceptional circumstances." *See Kohn v. American Metal Climax, Inc.*, 458 F.2d 255, 307 (3d Cir.1972). The Third Circuit has recognized that "[a]llowing parties easily to set aside or modify stipulations ... wast[es] judicial resources and undermin[es] future confidence in such agreements." *See Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir.1998). Therefore, federal caselaw clearly establishes that a stipulation remains in effect unless a failure to modify or set it aside would result in "manifest injustice." *See Waldorf*, 142 F.3d at 616; *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1097 (10th Cir.1991); *Hunt v. Marchetti*, 824 F.2d 916 (11th Cir.1987).

In *Waldorf v. Shuta*, the Third Circuit listed four factors that courts have focused on in determining whether a refusal to alter or modify a stipulation would result in manifest injustice:

1) the effect of the stipulation on the party seeking to withdraw the stipulation; 2) the effect on the other parties to the litigation; 3) the occurrence of intervening events since the parties agreed to the stipulation; and 4) whether evidence contrary to the stipulation is substantial.

Court must allocate these costs among the applicable policy years for each medium; Additionally, the Court must determine whether insurance was available to Chemical Leaman to cover its post–1971 damages to the soil and wetlands. Finally, the Court must allocate the $11,055,000 credit amount such that the excess insurers in a particular policy year receive a credit in the amount of Aetna's policy limits for that year. *See Chemical Leaman*, 177 F.3d at 231–32.

The remand focuses primarily on the designation and allocation of past cleanup costs to specific policy years. Issues regarding the identity of the insurers held liable under each policy year were resolved in the previous trial and are not before this Court.

**3.** The policy provides that Walbrook would assume 19.05% of the first 80%, or 15.24%.

*Id.* at 617–18 (citations omitted). After analyzing LMI's contentions within the framework established in *Waldorf,* this Court concludes that it would not be manifestly unjust to enforce the stipulation.

### 1. Effect of the Stipulation on the Party Seeking Modification

■ Defendant's brief contends that enforcement of the 1992 stipulation as drafted would prejudice the excess insurers included in the stipulation because those companies received no consideration for the coverage they are charged with. *See* Def.['s] Br. at 22. This argument, however, ignores the fact that the proposed amendments were available to LMI's counsel prior to the stipulation agreement, a factor the court relied upon to dismiss analogous claims of prejudice by the *Waldorf* defendant.

In *Waldorf v. Borough of Kenilworth,* 878 F.Supp. 686, 694 (D.N.J.1995), *aff'd sub nom. Waldorf v. Shuta,* 142 F.3d 601, 618 (3d Cir.1998), the court rejected a similar contention. Emphasizing that the defendant "seeks to offer evidence that probably has been available to it since the time of the first trial," the *Waldorf* court dismissed defendant's argument that enforcement of its pretrial stipulation to liability would result in prejudice. *Id.* at 694. The court imputed a duty of due diligence upon the moving party, recognizing that a failure to provide an adequate explanation for the initial omission of the evidence, "would lead to the right to relief based only upon evidential rethinking and other morning-after quarterbacking[.]" *Id.* On appeal, the Third Circuit affirmed the *Waldorf* decision, emphasizing that the moving party did not "claim that the evidence [was] the product of an intervening event or that it previously could not have [been] discovered.... Thus, this case does not involve circumstances that have changed dramatically so as to warrant granting ... relief from the stipulation." *Waldorf,* 142 F.3d at 618.

LMI concedes that the evidence in question was in its possession prior to entering the stipulation, but contends that the omission of the evidence was "due to inadvertence or oversight." *See* Def.['s] Br. at 4. While LMI asserts that its omission was the result of mere inadvertence, this contention is severely undercut by Chemical Leaman's uncontradicted assertions that counsel spent nine months negotiating and drafting the stipulation order. *See* Decl. of Ann Staron at ¶¶ 1–5. Hence, it appears that any prayer for relief advanced by LMI is grounded upon its own failure to exercise due diligence with respect to the pre-trial stipulations, an argument that was soundly rejected in *Waldorf.*

### 2. The Effect on the Other Parties to the Litigation

LMI astutely observes that allowing modification of the stipulation in the instant matter would require no additional litigation because "issues of coverage and allocation are the same regardless of what companies provide the security." *See* Def.['s] Br. at 24. This observation, however, ignores the considerable time and efforts this Court has invested addressing the instant motion, as well as any additional time that would be required had the Court elected to conduct a hearing on the matter. Moreover, a careful examination of LMI's opposition papers reveals the dangers inherent in allowing such a modification. Specifically, a footnote in the defendant's brief asserts that "[a] preliminary investigation has identified omitted London broker documents from LMI policy number 77–3833–18." *See Id.* at 11 n.2. The footnote further asserts that "[h]aving now been alerted to the omission ... LMI's counsel initiated an investigation of the remaining LMI excess policies ... to ascertain if other London broker documents from other LMI excess policies were omitted from the Policy Stipulation." *See id.*

While it may be true that allowing modification in the instant case will not require additional litigation, counsel for the defen-

dant has clearly expressed its intent to relitigate any of the remaining stipulations that it finds unsatisfactory. Resolution of "other" stipulation disputes would *a fortiori* require judicial involvement which would clearly burden the judicial system and potentially upset the expedited scheduling track that this case is currently on. Thus, allowing the defendant seven years later to review each and every stipulation for similar "oversights" would prejudice the judicial process and undermine the certainty and judicial economy that stipulations are intended to provide. *See Waldorf v. Shuta*, 142 F.3d at 616.

Opening the door to review of future stipulation amendments would likewise prejudice Chemical Leaman. Relitigating the veracity of stipulations agreed to seven years ago requires the considerable time and efforts of counsel in preparing opposition papers and reviewing voluminous insurance agreements. The *Waldorf* court noted the prejudice inherent in revisiting issues after a lengthy time lapse, explaining that "there would be further delays in the case, because [the plaintiff] would have to determine the availability of witnesses and marshal the evidence that pertained to an issue which the parties had not contested for years." *See Waldorf*, 142 F.3d at 615. Thus, it is clear that the significant lapse between the stipulation and the instant motion prejudices Chemical Leaman as well as the Court,[4] and therefore weakens any claims of "manifest injustice" proffered by LMI.

### 3. Occurrence of Intervening Events

While the *Waldorf* opinion articulated four factors for consideration, this Court has found that the majority of the reviewing courts cited by the circuit appeared to focus primarily on one common question: whether a *subsequent* change

of circumstances was so dramatic that strict adherence to the pretrial stipulation would result in "manifest injustice." *See Graefenhain v. Pabst Brewing Co.*, 870 F.2d 1198, 1206 (7th Cir.1989)(holding that a district court's refusal to rescind a stipulation does not constitute an abuse of discretion, "unless circumstances have changed so dramatically that relief is necessary to prevent a 'manifest injustice' "); *Logan Lumber Co. v. Commissioner*, 365 F.2d 846, 854–56 (5th Cir.1966)(explaining that a stipulation may be voided where the relevant law relied upon at the time of the stipulation is overruled thereafter); *Bail Bonds By Marvin Nelson, Inc. v. Commissioner*, 820 F.2d 1543, 1547–48 (9th Cir.1987)(upholding the tax court's refusal to vacate a stipulation because "nothing subsequently occurred to change the effect of the original stipulation").

Like the *Waldorf* defendant, LMI's argument is not based upon newly discovered evidence, but rather evidence that was in the moving party's control prior to the agreement. LMI's brief concedes that it had the alleged policy amendments in its possession prior to the 1992 stipulation. *See* Lee Decl. at ¶ 4 (acknowledging that LMI produced the relevant documents to Chemical Leaman in 1989 or 1990). In fact, the only relevant change in circumstances subsequent to the 1992 stipulation, Walbrook's insolvency, militates against rescission of the agreement. Thus, it can not be reasonably argued that the modification sought is the result of an intervening occurrence, a critical factor the Third Circuit focused on in the *Waldorf* decision. *See Waldorf*, 142 F.3d at 601(rejecting a request to rescind the stipulation because the defendant "does not claim that the evidence is the product of an intervening

---

4. As part of its judicial prejudice argument, Chemical Leaman contends that modification of the stipulation would compromise the integrity of the judicial system by violating the mandate rule and law of the case doctrine. The mandate rule precludes a court from hearing issues beyond the scope of the appel-

late court's remand while the law of the case doctrine provides that once an issue is decided, it will not be relitigated absent unusual circumstances. Since the Court has found prejudice based on the reasons set forth above, it need not address these arguments.

event or that it previously could not have discovered the evidence").

### 4. Substantial Evidence Contrary to the Stipulation

LMI's opposition papers argue that substantial evidence exists contrary to the stipulation. *See* Def.['s] Br. at 13 –17. In support of its assertions, the defendant submitted several declarations from various insurers, as well as other documentary evidence. After carefully reviewing the record before it, the Court concludes that LMI has failed to satisfy this evidentiary requirement.

In its brief LMI contends that the changes embodied in endorsement 17 were made on behalf of Chemical Leaman's agents in accordance with the general practices of the London insurance industry. *See* Def.['s] Br. 10–11. The excess insurers claim that John J. Manley ("Manley"), Chemical Leaman's retail insurance broker, contacted Stewart Smith East ("Smith"), a wholesale surplus lines broker located in the U.S., to obtain surplus lines coverage. *See* Def.['s] Br. at 8. LMI asserts that Smith then contacted Stewart Wrightson ("Wrightson"), a London insurance broker, who approached London based underwriter H.S. Weavers Underwriting Agencies Ltd. ("Weavers") with a request for coverage. *See id.* Acting on behalf of several insurers, Weavers then negotiated the terms memorialized in X1186. *See id.* at 8–9.

According to the defendant, after the terms were negotiated Wrightson issued a cover note to Smith, who checked the terms to ensure compliance with Pennsylvania's surplus line laws. *See id.* at 9–10. Discovering that Walbrook was the only insurer that was listed under Pennsylvania law as an eligible surplus line insurer, LMI

contends that Smith contacted Wrightson and requested that Weavers modify the policy to conform with Pennsylvania law. *See id.* at 9–11. After receiving Smith's instruction, defendant claims that Wrightson negotiated the requested modification with Weavers, substituting Walbrook for an additional 60.95% of the policy. *See id.* Shortly thereafter, defendant alleges, Wrightson sent the amendment to Smith, who forwarded a copy to Chemical Leaman's retail broker, Manley. *See id.* at 11.

While the defendant's account of endorsement 17's origin appears persuasive at first glance, a close examination of the supporting documentation reveals that LMI's contentions are based on general averments, not "substantial evidence." The documentary evidence submitted by LMI includes evidence that both Wrightson and Smith were aware of proposed endorsement 17, *see* Lee Decl. Ex. H, K., but fails to provide direct evidence establishing that either Chemical Leaman or its retail broker John J. Manley, Inc. either initiated or received information concerning the proposed change.[5]

LMI argues, however, that proof of direct involvement by either Chemical Leaman or Manley is unnecessary because, according to LMI, Smith and Wrightson were acting as Chemical Leaman's agents when the alleged changes were made. This argument, however, ignores the applicable agency law and fails to provide a competent evidentiary basis for its assertions. LMI alleges that Wrightson, acting as Chemical Leaman's agent, proposed the policy change to excess insurer Weavers in order to conform with a Pennsylvania surplus line requirement identified by Smith. In support of this contention defendant proffers declarations from various insurance brokers associated with the compa-

---

5. While LMI's brief argues that a copy of an unsigned letter addressed from Carol Fontanella, the Stewart Smith employee charged with handling the applicable Chemical Leaman policies, to Chemical Leaman's retail broker necessarily implies that Manley received the letter, this Court does not find that

such circumstantial evidence rises to the "substantial" level articulated by the Third Circuit, especially when LMI's discovery search of Manley's files yielded nothing and the letter proffered is unsigned. *See* Pl.['s] Br. at 10; Decl. of Henry Lee Ex. K.

nies involved. *See generally* Decl. of Peter Wilson; Decl. of Michael G. Cobb; Decl. of Alexander J. Wayne. Noticeably absent from the evidence submitted is the testimony of anyone who dealt directly with these transactions. LMI's submissions include a letter purportedly prepared by Caroline Fontanella, the Stewart Smith employee who allegedly handled the transaction. The letter, however, is unsigned and the excess insurers neglected to provide any testimonial evidence from her on the matter. Instead, LMI offers conclusory statements which testify to the "general" practices of the excess insurance market and opine based on these statements that any change would have to be initiated by an agent for the insured. While the evidence provides a solid basis for understanding the London insurance industry, it lacks the specificity necessary to constitute "substantial evidence." This is especially apparent when the purported amendment occurred two years after the alleged impetus for the change.

The original policy, no. 77–3833–19, went into effect on April 1, 1977 and was dated July 25, 1977. *See* Decl. of John P. Dean at ¶ 4 & accompanying Ex. 3. Endorsement 17, the amendment allegedly requested by Stewart Smith East after reviewing the initial policy, is dated July 18, 1979. *See* Decl. of Henry Lee at ¶ 7 & accompanying Ex. A. One would think that if the policy was reviewed upon receipt by the domestic wholesale broker for conformity with applicable regulations, as defendant alleges, that the broker would not wait approximately two years to request a modification to ensure compliance. This unexplained delay in the procedural chain articulated by LMI raises serious doubts as to the accuracy of its account, especially

in light of LMI's failure to provide any direct evidence linking either Chemical Leaman or its retail broker to the modification.

█ Further, while the defendant contends that Chemical Leaman is bound by the actions of the wholesale brokers, it fails to assert a competent legal basis for this assertion. Citing a California district court case, LMI argues that London brokers act as agents for the insured as a matter of law. *See* Def.['s] Br. at p. 12. However, an examination of the relevant authorities reveals that the issue of whether a wholesale broker is an agent of the insured is a question of fact.[6] Thus LMI's failure to provide competent evidence of any agreements or directives from either Manley or Chemical Leaman to the wholesale brokers necessarily falls short of establishing "substantial evidence" of an agency relationship.

█ Moreover, even if LMI could present substantial evidence contrary to the stipulation, this Court contends that such proof, on its own, would not constitute "manifest injustice." In *Sims v. Wyrick,* 743 F.2d 607, 610 (8th Cir.1984), the Eight Circuit rejected the notion that stipulations could be modified upon such a showing.

> We see no suggestion of manifest injustice ... and ... cannot accept the suggestion that a stipulation may be disregarded whenever substantial evidence contradicting it were introduced. Indeed, *if substantial evidence ... were all that was required to disregard it, the purpose of stipulations would be severely undercut.* ... If a party could be relieved of a stipulation on a mere show-

---

**6.** *See* 3 Couch on Ins. § 45.9 (3d ed.1996)(noting that "[t]he question whether a broker is the agent of the insured or the insurer is ordinarily one of fact for determination by the jury"); *Keehn v. Hi–Grade Coal & Fuel Co.,* 23 N.J. Misc. 102, 41 A.2d 525, 530 (Ct.C.P.1945)(explaining that "[i]t is the facts as a whole that count" when determining issues of broker agency). Further, Couch ex-

plains that the grant of authority to procure an initial policy does not constitute an authorization to modify. "An agent whose authority is merely to solicit insurance, deliver, and collect premiums, has no power to change stipulations in the contract of insurance. He or she cannot ... modify the terms and conditions under which a policy will be issued[.]" *See* 4 Couch on Ins. § 51:53 (3d ed.1996).

ing of substantial contrary evidence, *litigants could not rely on stipulations of fact and would have to be fully prepared to put on their proof.*

*Id.* (emphasis added). This Court agrees with the Eighth Circuit's reasoning. Allowing parties repeated bites of the apple for their failures to "get it right" the first time unnecessarily encumbers the courts and removes counsel's burden to earnestly pursue the stipulation process. Thus while a showing of "substantial evidence contrary to the stipulation" is a factor to be considered within the framework of the Third Circuit's *Waldorf* opinion, this Court finds that it is the least compelling of the factors and weights it accordingly. Therefore, after reviewing the arguments proffered by LMI within the framework of the Third Circuit's *Waldorf* opinion, this Court finds that enforcement of the August 10th 1992 stipulation would not constitute "manifest injustice."

## B. RELIEF UNDER THE STIPULATION

▮ LMI alternatively contends that the language of the stipulation expressly entitles them to seek modification in this instance. *See* Def.['s] Br. at 14–17. The pertinent language of the agreement reads as follows:

This Stipulation shall not prohibit either Chemical Leaman or the London Market Insurers from offering any policy, endorsement, or other document into evidence *at trial,* or prevent Chemical Leaman or the London Market Insurers from offering any other evidence *at trial.*

Finally Chemical Leaman and the London Market Insurers shall act in good faith to determine whether this Stipulation should be modified or supplemented *prior to trial* . . . if the evidence clearly shows that a stipulated fact is misleading or in error. Further, each party shall have the express right to ask the Court to modify, supplement or void the entire Stipulation or any portion of this

Stipulation based on . . . evidence clearly establishing that some fact or set of facts is in error or is materially misleading.

August 10th 1992 Stipulation and Order at 2–3 (emphasis added). While the defendant correctly notes that the pretrial stipulation authorizes judicial modification for errant stipulations, for the reasons discussed below, LMI's argument fails.

The excess insurers claim that the absence of any time related language from the last sentence implies that no time limit exists with respect to a parties right to petition the court for relief. This argument, however, appears inconsistent when viewed within the context of the two surrounding paragraphs. Examining the relevant language in its entirety, it is clear to the Court that the stipulation agreement did not contemplate post-trial modifications, but rather outlined a potential avenue of relief prior to and during trial: the first paragraph contemplates the proffer of evidence *at trial,* while the second paragraph outlines a process by which the parties may seek relief from the stipulations *prior to trial.*

Specifically, the first sentence of the second paragraph instructs the parties to make a good faith effort to settle any pretrial stipulation disputes amongst themselves, while the second sentence provides that if no agreement can be reached the parties have the right to seek court assistance. Thus, viewing the language within the context of the paragraph, it appears clear that the parties intended to limit a party's right to judicial intervention to the pre-trial period. Conversely, acceptance of the limitless jurisdiction argued by LMI would lead to absurd results. Surely the parties did not intend, nor would this Court accept, a role in which the Court served as a perpetual guardian, charged with overseeing the sanctity of the stipulation agreement long after this matter has

left the Court's docket.[7]

Moreover, a close examination of the agreement's language reveals that the stipulation does not provide automatic relief in the enumerated instances, but merely grants parties the right to petition the court for assistance. The last sentence provides, in pertinent part, that "each party shall have the express right *to ask the Court* to modify" the stipulation. *Id.* at 3 (emphasis added). Thus, assuming arguendo that the language provides an indefinite time frame for judicial intervention, any decision to rescind or modify is left with the discretion of the court.[8] For the reasons discussed *supra*, this Court does not believe that either recission or modification is warranted. Stipulations play an important role in the judicial process, and this Court refuses to devalue them by altering them seven years later based on evidence that was in the parties possession prior to the agreement.

## III.  CONCLUSION

For the reasons stated above, Chemical Leaman's motion regarding the 1977–80 policies is granted. Accordingly the August 10th 1992 Stipulation and Order shall be enforced and liability for policy number 77–3833–19 will be determined in accordance with page X1186. The Court will enter an appropriate order.

---

7.  Nor is this interpretation of the stipulation inconsistent with the Court's determination that the stipulation remain binding in subsequent proceedings. It is important to note that the intent to limit modification to the initial trial does not evince an intent to limit the binding force of the stipulation.

8.  In a previous footnote the Court stated its intention to treat this motion as a motion to enforce a stipulation and not a motion for summary judgement. See *supra,* note 1. The Court notes that even if the motion were treated as a summary judgement motion the same result would be reached. Assuming ar-

guendo that the interpretation of the stipulation advocated by LMI was correct, the agreement would, at most, grant the party the right to petition the Court for relief. For the reasons discussed *supra,* the Court would deny such a petition. Further, this court concludes based on the facts detailed above, most notably: 1)LMI's admission that endorsement 17 was not discovered subsequent to the stipulation, but rather was in its possession prior to the agreement; and 2) the seven year gap between the stipulation and this motion, that enforcement of the stipulation would not as a matter of law constitute "manifest injustice."