# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1109
_____

Joe R. Whatley, Jr., solely in his capacity as the WD Trustee of the WD Trust other
WD Trust

*Plaintiff - Appellant*

v.

Canadian Pacific Railway Company; Soo Line Railroad Company

*Defendants - Appellees*

World Fuel Services, Corp.

*Intervenor below*

_____

No. 24-1477
_____

Joe R. Whatley, Jr., solely in his capacity as the WD Trustee of the WD Trust other
WD Trust

*Plaintiff - Appellee*

v.

Canadian Pacific Railroad Company; Soo Line Railroad Company

*Defendants - Appellants*

World Fuel Services, Corp.

*Intervenor*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: March 18, 2025
Filed: July 3, 2025

_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.


On July 6, 2013, sixty-three tank railcars derailed in Lac-Mégantic, Quebec, Canada, spilling crude oil and causing a series of massive explosions that killed forty-seven people and destroyed the center of town. This appeal concerns a consequent suit brought by Joe R. Whatley, Jr.—as trustee of a trust for the wrongful death claimants—against the Canadian Pacific Railroad Company and various related companies.[1] The district court determined that Canadian Pacific was liable to Whatley for the value of the train's crude oil cargo, plus prejudgment interest. For the reasons set forth below, we reverse and remand.

## I. Background

On June 29, 2013, a Canadian Pacific train carrying crude oil left New Town, North Dakota, bound for an oil refinery in New Brunswick, Canada. World Fuel Entities ("WFE") was the shipper. Canadian Pacific transported the cars as far as Quebec and then turned them over to the Montreal Maine & Atlantic Railway ("MMA"). On the evening of July 5, while still en route, MMA parked the train overnight, set the hand brakes improperly, and left it unattended. Early the next morning, the lead locomotive—which provided additional braking force—caught

---

[1]Canadian Pacific Railroad Company is the parent company of the Soo Line Railroad. For simplicity, the two are collectively referred to as "Canadian Pacific."

fire due to a non-standard repair and was shut down. The unattended train began rolling downhill toward the town of Lac-Mégantic. There, sixty-three of its seventy-two cars derailed, spilling their crude oil and causing a series of massive explosions that took the lives of forty-seven people and destroyed the center of town. MMA's negligence is the undisputed sole cause of the derailment and disaster.

Shortly thereafter, MMA filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Maine. Its approved bankruptcy plan established a trust "for the sole purpose of liquidating and distributing" its assets to wrongful death claimants. Whatley, the plaintiff here, serves as trustee. Around the same time, various parties, including the shipper, WFE, entered into settlement agreements with MMA. Canadian Pacific did not settle.

MMA's approved bankruptcy plan addressed the rights and liabilities of "Non-Settling Defendants" as well as of "Released Parties" who had executed settlement agreements with MMA. Canadian Pacific was a non-settling defendant and WFE was a released party. Under the plan, non-settling defendants were barred from asserting a derailment-related claim against the released parties. The bankruptcy plan also included a judgment reduction provision. This provision ensured that non-settling defendants would not be responsible for more than their proportionate share of the liability, despite the released parties' immunity from suit. The provision instructed future trial courts to reduce any initial damages award against a non-settling defendant by a formula-determined "Judgement Reduction Amount."

A released party, WFE executed a separate settlement agreement. In that settlement agreement, WFE assigned to MMA all of WFE's liability for derailment-related claims, as well as "any and all rights, at law or contractual, of indemnification and/or contribution" that WFE had or may have had, including its rights under the Carmack Amendment. *See* 49 U.S.C. § 11706(a)(1) (providing that certain qualifying rail carriers "are liable to the person entitled to recover under the receipt

or bill of lading" "for the actual loss or injury to the property caused by . . . the receiving rail carrier"). MMA then transferred those rights to the trust.

In 2016, Whatley sued Canadian Pacific, asserting WFE's assigned Carmack Amendment claims. The district court ultimately determined that Canadian Pacific was liable under the Carmack Amendment for the value of the train's crude oil cargo. Whatley and Canadian Pacific submitted a joint stipulation to the district court. This joint stipulation contained two key provisions: (1) that the crude oil cargo had been worth one of three possible, specified amounts and (2) that the district court "shall decide whether the Judgment Reduction Provision applies in this action, and if so how, prior to entry of final judgment . . . ." The district court adopted the joint stipulation "in its entirety." Canadian Pacific accordingly moved to apply the judgment reduction provision and Whatley cross-moved for the value of the crude oil and for prejudgment interest. In a single order resolving both motions, the district court found the value of the crude oil to be $3,950,464 and granted Whatley that amount, along with prejudgment interest. However—despite accepting the parties' joint stipulation in its entirety—the district court declined to address whether the judgment reduction provision applied, concluding that it was "a matter properly reserved to the Bankruptcy Court" that had approved the plan. Canadian Pacific filed a motion for reconsideration, asking the court to reconsider its decision not to apply the judgment reduction provision, which the court denied.

Both parties appeal, raising numerous arguments regarding whether and how the district court erred in its grant of damages and prejudgment interest. We need only address two of their arguments, which turn out to be dispositive: First, did the district court abuse its discretion by setting aside part of the parties' joint stipulation that it had previously adopted? And if so—regarding this set-aside portion of the stipulation—does the judgment reduction provision in MMA's bankruptcy agreement apply to reduce Canadian Pacific's judgment to zero?

-4-

## II. Discussion

We first address the district court's decision to set aside part of the joint stipulation. We review a district court's decision to bind a party to its stipulation for abuse of discretion. *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998) (citing *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1098 (10th Cir. 1991)); *see also SEC v. Quan*, 870 F.3d 754, 759 (8th Cir. 2017) (reviewing district court's decision to approve a stipulation for abuse of discretion). "[S]tipulations of fact fairly entered into are controlling and conclusive . . . ." *Sims v. Wyrick*, 743 F.2d 607, 610 (8th Cir. 1984); *see also Stern v. Stern*, 639 F.3d 449, 453 (8th Cir. 2011). Thus, district courts may only exercise their equitable powers to set aside such stipulations "under exceptional circumstances," such as to prevent a manifest injustice. *Sims*, 743 F.2d at 610. However, even under exceptional circumstances, this power is limited. As our sister circuits have acknowledged, a court abuses its discretion if it "remove[s] a material part of the stipulation over the objection of one of the parties" but still "enforce[s] the rest of the agreement." *A & A Sign Co. v. Maughan*, 419 F.2d 1152, 1155 (9th Cir. 1969); *see also Kohn v. Am. Metal Climax, Inc.*, 458 F.2d 255, 307 (3d Cir. 1972) (Adams, J., concurring in part) ("[W]here a stipulation has more than one material part, one such portion may not be deleted and the remainder of the stipulation enforced."), *partially overruled on other grounds by Kershner v. Mazurkiewicz*, 670 F.2d 440, 448 (3d Cir. 1982). Rather, the appropriate relief would be to restore the parties to "the position in which they were before the stipulation was made." *Morse Boulger Destructor Co. v. Camden Fibre Mills, Inc.*, 239 F.2d 382, 383 (3d Cir. 1956); *see also Greenspahn v. Joseph E. Seagram & Sons*, 186 F.2d 616, 620 (2d Cir. 1951) ("To obtain relief from a stipulation the moving party must show that unless relieved he will suffer a substantial injustice and that the other parties to the stipulation can be restored to the same position they would have had if no agreement had been made.").

Here, the joint stipulation consisted of two key components: the district court would decide (1) which of three possible amounts the crude oil cargo was worth, and (2) whether the judgment reduction provision applied, "and if so how." After

accepting the stipulation "in its entirety," the district court decided the first issue but declined to decide the second—whether the judgment reduction provision applied—and instead opted to deny Canadian Pacific's motion without prejudice. It concluded that "the District of Maine Bankruptcy Court is the proper jurisdiction to determine the scope of its own order and whether it acts as a bar to Whatley collecting on the judgment in this case from [Canadian Pacific]." It later explained, in its order rejecting Canadian Pacific's motion for reconsideration, that this did not mean the district court *lacked* jurisdiction over the bankruptcy order. Rather, the district court believed that the bankruptcy court was the "better venue" or "proper jurisdiction" to decide whether the judgment reduction provision applied. By setting aside only part of the stipulation, the district court abused its discretion. Even if this were an "exceptional circumstance[]," *see Sims*, 743 F.2d at 610—a question which the district court did not address—the proper remedy would likely have been to restore the parties to their original positions. *See Morse*, 239 F.2d at 383. And this is not an exceptional circumstance. *See, e.g., Consol. Grain & Barge Co. v. Archway Fleeting & Harbor Serv., Inc.*, 712 F.2d 1287, 1289-90 (8th Cir. 1983) (per curiam) (finding that a district court erred in failing to apply the jointly stipulated interest rate when neither party had sought relief from the stipulation and when there was no evidence that the district court had considered and rejected the stipulation).

We next address whether the judgment reduction provision applies. The district court did not address this issue on its merits. However, we may, in our discretion, resolve a matter of law for the first time on appeal. *Singleton v. Wulff*, 428 U.S. 106, 121 (1976). We elect to do so here, given that the issue—whether the judgment reduction provision applies—is purely legal and the parties briefed it both before the district court and before us. *See Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023).

The MMA bankruptcy plan provided that a trial court should, before entering a judgment against Canadian Pacific, reduce its initial damages determination by the "Judgment Reduction Amount." The plan provided for three possible methods of calculating the judgment reduction amount, depending on the situation. Here, the

parties agree that the appropriate method requires the court to calculate the value of the "Contribution/Indemnity Credit."

Normally—without an intervening contract such as the MMA bankruptcy agreement—a claim for "contribution" or "indemnity" may be brought by a party found liable in tort against its fellow tortfeasors. With such claims, the liable party seeks reimbursement or compensation for part or all of the judgment. *See Contribution*, Black's Law Dictionary (12th ed. 2024); *Indemnity*, Black's Law Dictionary (12th ed. 2024). This might be employed when multiple tortfeasors are liable for a judgment but only one of those parties has been sued. *See, e.g.*, *Maddux v. Cox*, 382 F.2d 119, 124 (8th Cir. 1967). After the court enters a judgment against the sued party and it has paid, the sued party may in turn bring a suit for contribution or indemnity against any other liable tortfeasors. *See Contribution*, Black's Law Dictionary (12th ed. 2024).

Here, the approved bankruptcy agreement and order prevent Canadian Pacific from asserting a contribution or indemnity claim against MMA or against any of the released parties that settled with MMA. Thus, the "Contribution/Indemnity Credit" acts to ensure that Canadian Pacific pays no more than its proportionate liability for the Lac-Mégantic derailment tragedy. The agreement provides that the credit should equal the value "of all contribution or indemnification claims" that Canadian Pacific "would be entitled to" from a released party "but for operation of the Order." The value of these claims should be calculated "in accordance with the holding in, and methodology adopted by, *Austin v. Raymark Indus.*, 841 F.2d 1184 (1st Cir. 1988)." Thus, to calculate the judgment reduction amount, we must first consider *Austin*.

*Austin* addresses the calculation of a damages award when multiple defendants are liable, but some have settled out-of-court and others have gone bankrupt. *Id.* at 1185. In *Austin*, the wife of a man who had died due to asbestos exposure sued multiple asbestos suppliers. *Id.* At trial, the jury both awarded damages and apportioned liability for the death among four asbestos manufacturers—two of which had already settled and one of which was bankrupt.

-7-

*Id.* The First Circuit found that the damages award should be reduced by a percentage based on the settling defendants' respective portions of fault. *Id.* at 1194-95. It also found that the bankrupt manufacturer's portion of the award should be allocated proportionately among the remaining defendants, even those that had already settled. *Id.* at 1196. This ensured each party proportionately bore the shortfall of the bankrupt party. *Id.* This had the effect of reducing the plaintiff's award by the percentage of the bankrupt company's liability that was assigned to the defendants who had already settled. *Id.* Even so, the court explained that this was fair because the plaintiff had agreed in settlement agreements to satisfy any contribution claims made against the settling defendants. *Id.*

Here, the district court already determined—and the parties do not dispute—that MMA was solely liable for the Lac-Mégantic derailment tragedy. Thus, under *Austin*, 100% of the liability belongs to MMA. Unlike in *Austin*, there are no joint tortfeasors who share liability with MMA. Thus, no other party can fairly be made to take on MMA's share of the liability. Therefore, Canadian Pacific is entitled to a 100% judgment reduction credit; regardless of the ultimate damages determination under the Carmack Amendment, any judgment against Canadian Pacific must be reduced to zero.[2]

---

[2]We are not the first court to find that the judgment reduction provision acts to reduce Canadian Pacific's liability in proportion with MMA's comparative fault. The United States District Court for the District of Maine, which approved the MMA bankruptcy agreement, reached the same conclusion in *In re Montreal Maine & Atl. Ry.*, when it found that "[t]he Order of the Bankruptcy Court confirming the Trustee's plan of liquidation contains a 'proportionate judgment reduction' provision under which Canadian Pacific's liability for the Lac-Mégantic disaster, if any, may be reduced by the comparative fault of MMA, which operated the train." No. 1:15-MC-00355-JDL, 2016 WL 706185, at *2 (D. Me. Feb. 22, 2016).

## III. Conclusion

For the foregoing reasons, we reverse the district court's denial of Canadian Pacific's motion to apply the judgment reduction provision and remand for a complete reduction of the judgment against Canadian Pacific.

_____