# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2098

_____

| | |
|---|---|
| Eric W. Sorenson, | * |
| | * |
| Plaintiff-Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   District of Nebraska. |
| Janea M. Sorenson, | * |
| | * |
| Defendant-Appellee. | * |

_____

Submitted: December 12, 2008
Filed: March 23, 2009

_____

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

_____

GOLDBERG, Judge.

Eric Sorenson appeals the district court's[2] rulings on his claim under Article 15 of the Hague Convention on the Civil Aspects of International Child Abduction

_____

[1]The Honorable Richard W. Goldberg, United States Court of International Trade, sitting by designation.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

(Hague Convention), 19 I.L.M. 1501 (1980), as implemented by the United States in the International Child Abduction Remedies Act, 42 U.S.C. § 11601-11610 ("ICARA"). Because we find that Australia was the child's habitual residence at the time of the allegedly wrongful retention, we affirm the decision of the district court.

## I. BACKGROUND

Eric and Janea Sorenson were married in October of 2002 in Chicago, Illinois. The same year, they had a daughter E.S.S. in Minnesota, where the couple resided. In 2003, Eric accepted a work transfer to Australia and the family moved to the Sydney-area under a three year work visa. Before moving, Eric and Janea sold their residence, automobiles, and they also shipped most of their personal belongings to Australia. Within a few months of moving to Australia, their relationship deteriorated and they separated in October of 2004. In May 2007, Janea notified Eric of her intention to remain in Australia. Eric moved back to Minnesota and filed for divorce, and for E.S.S.'s return. However, the Hennepin County District Court found that it lacked jurisdiction. Eric then filed a request for E.S.S.'s return in the Australian courts, claiming that E.S.S. had been wrongfully retained. To facilitate this claim, the Australian court asked Eric to file a petition to the District Court of Minnesota for a determination of E.S.S.'s habitual residence under the Hague Convention. Upon receiving Eric's petition, the district court held a bench trial, and concluded that Australia was E.S.S.'s habitual residence. Eric now appeals this determination.

## II. JURISDICTION & STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1291 (2000). Determinations of habitual residence under the Hague Convention raise mixed questions of law and fact, and should be reviewed de novo. Silverman v. Silverman, 338 F.3d 886, 896 (8th Cir. 2003) (en banc). Determinations of intent, however, involve questions of

fact and the Court must defer to the district court's findings unless they are clearly erroneous. See, e.g., Koch v. Koch, 450 F.3d 703, 710 (7th Cir. 2006).

### III. DISCUSSION

The sole issue in this case is whether the district court erred in making its habitual residence determination. Under the Hague Convention, the retention of a child is wrongful if it breaches the rights of a custodian "under the law of the State in which the child was habitually resident immediately before removal or retention. . . ." Dept. of State, Hague Int'l Child Abduction Convention; Text & Legal Analysis (Mar. 26, 1986), 51 Fed. Reg. 10494, 10505. Accordingly, if E.S.S.'s habitual residence was Australia at the time of the retention, the Convention would not compel E.S.S.'s return to the United States.[3]

Habitual residence was not defined by the Hague Convention, and subsequent courts have had some difficulty in interpreting this term. See Holder v. Holder, 392 F.3d 1009, 1015 (9th Cir. 2004). The Eighth Circuit has, however, provided guidance, explaining that:

> [a] person may have only one habitual residence, and it should not be confused with domicile. [T]he court must focus on the child, not the parents, and examine past experience, not future intentions. Habitual residence may only be altered by a change in geography and passage of time.
>
> Federal courts are agreed that "habitual residence" must encompass some form of "settled purpose." The settled purpose need not be to stay in a new location forever, but the family must have a "sufficient degree of continuity to be properly described as settled."

---

[3] Here, the time of the allegedly wrongful retention is not in dispute. Until the Sorensons' visas expired in June of 2007, and Eric returned to the United States, E.S.S. was in Australia with the permission of both parents. Accordingly, the relevant time for examining E.S.S.'s habitual residence is June 2007.

Silverman, 338 F.3d at 898 (citations omitted).  In Silverman, the Court further explained the nature of the intended review, explaining that:

> [t]he [district] court should have determined the degree of settled purpose from the children's perspective, including the family's change of geography along with their personal possessions and pets, the passage of time, the family abandoning its prior residence and selling the house, the application for and securing of benefits only available to . . . immigrants, the children's enrollment in school, and to some degree, both parents' intentions at the time of the move . . . .

Id.

Application of Silverman to the district court's findings of fact compels a similar conclusion.  Again, settled purpose is viewed from the child's perspective. See Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 379 (8th Cir. 1995).  As of June 2007, E.S.S. had experienced a clear change in geography as the Sorensons moved to Australia along with most of their possessions.   A substantial amount of time, three years, had also passed prior to the alleged retention.  By this point, E.S.S. was settled and acclimatized to life in Australia, and even spoke with an Australian accent. Additionally, all of E.S.S.'s friends lived in Australia, and she was enrolled in preschool.  In short, E.S.S. had spent the overwhelming majority of her life in, and the majority of her connections were to, Australia as of June 2007.[4]

As the parents' intentions at the time of the move are relevant, we also consider this factor.  Here, the district court found that Eric and Janea's shared intention was to live in Australia for an indefinite period of time, but at the minimum, a period of

---

[4] The only substantial difference from Silverman is the fact that the Sorensons did not file for citizenship or benefits in Australia, in 2004, upon their arrival.  However, this alone does not overcome the other factors pointing toward a sufficient degree of settled purpose or a degree of continuity to make Australia E.S.S.'s habitual residence in June of 2007.

three years. The district court further concluded that the parties did not have a mutual shared intention to return to Minnesota, or the United States, upon completion of the work transfer. This determination of intent was supported by the witness John Vento, who stated that Eric would have had further opportunities with the computing firm upon completion of the three year term, which could have been in the firm's Australian offices or another U.S. location. The district court's determination of intent is not clearly erroneous, and adds further support to our <u>de</u> <u>novo</u> review of the district court's habitual residence determination.

In short, the <u>Silverman</u> factors and to a lesser extent the district court's determination of shared intent indicate that E.S.S. had been in Australia long enough to have a "sufficient degree of continuity to be properly described as settled." <u>Feder</u> <u>v. Evans-Feder,</u> 63 F.3d 217, 223 (3d Cir. 1995) (citing <u>In re Bates</u>, No. CA 122-89, High Court of Justice, Family Div'l Ct. Royal Courts of Justice, United Kingdom (1989)). As such, E.S.S.'s habitual residence as of June 2007 was Australia.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the decision of the district court is **AFFIRMED.**