# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2493

_____

| | |
|---|---|
| Martin Stern, | * |
| | * |
| Appellant, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the |
| | *   Southern District of Iowa. |
| Michelle Garland Stern, | * |
| | * |
| Appellee. | * |

_____

Submitted: April 12, 2011
Filed: May 6, 2011

_____

Before LOKEN, BALDOCK,[1] and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Alleging that his son DJ had been wrongfully retained in Iowa by Michelle Garland Stern, DJ's mother, Martin Stern petitioned in the district court[2] under the International Child Abduction Remedies Act (ICARA) for DJ's transfer to Israel for custody adjudication there. The district court denied the petition after finding that the

_____

[1]The Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

United States was DJ's habitual residence at the time of the alleged wrongful retention, and Martin appeals. We affirm.

Michelle, a dual citizen of the United States and Israel, first met Martin during a visit to Israel in 2000. Martin is a dual citizen of Israel and Canada. A year after meeting Martin, Michelle moved from the United States to Israel with her two children. Martin and Michelle were married in a religious ceremony in Israel, but they had no civil wedding there. Their son DJ was born in 2003.

In 2005 Michelle was accepted in a doctoral program at Iowa State University, and Martin signed a document consenting to her traveling to Iowa with DJ "for as long as she is enrolled in her PhD studies." Martin characterizes the document as memorializing a mutual agreement that Michelle and DJ would return to Israel as soon as her studies ended. Michelle denies there was such an agreement, and only Martin signed it. The document does not specify what would happen after Michelle's studies ended. In August 2005 Michelle moved to Iowa with her older children and DJ, who was then two. Martin followed in October 2005, after closing his taxi business in Israel.

Michelle and Martin were married in a civil ceremony in Iowa in 2006, but the relationship quickly broke down. Michelle filed for divorce in October 2007 although she did not serve Martin with any papers. The couple attempted reconciliation, but Martin returned to Israel in February 2008. At that time he believed Michelle would soon follow him there with the children. Shortly after Martin left the United States, Michelle proceeded with the divorce and requested temporary custody of DJ. During divorce proceedings, Michelle revealed that she would return to Israel with DJ and her other children only if she could find work there in her field.

Martin brought this action in the district court petitioning for DJ's return to Israel under ICARA. That act implements the Hague Convention on the Civil Aspects

of International Child Abduction, 19 I.L.M. 1501 (1980) (Convention). ICARA does not control substantive custody disputes, but rather governs selection of the forum where such a dispute should be brought. Barzilay v. Barzilay, 600 F.3d 912, 916 (8th Cir. 2010). The key question under ICARA is "whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence." Id. at 917. Martin claims wrongful retention, but he has no ICARA remedy if the United States is DJ's habitual residence. Silverman v. Silverman, 338 F.3d 886, 897 (8th Cir. 2003) (en banc). That is because a fundamental focus of the Convention is on the habitual residence of the child. Convention, 19 I.L.M. at 1501.

The district court held a bench trial in June 2010, after which it found that DJ habitually resided in the United States. The court found "little evidence" about DJ's connections with Israel. In contrast, it found DJ had "considerable connections with his current [Iowa] environment." At the time DJ was seven years old and had been living in Iowa since he was two. He had visited Israel once when he was three. DJ had finished one year of kindergarten in Iowa and had celebrated holidays with Michelle's family in Des Moines. In sum, the district court found that DJ had acclimated to Iowa. Regarding the intentions of DJ's parents, the district court found that the couple had intended to make Iowa DJ's habitual residence, at least during Michelle's studies, even though they planned to return to Israel eventually. Based on its findings it denied Martin's petition.

On his appeal, Martin argues that the district court gave insufficient weight to the parties' intention to return to Israel after Michelle graduated. Determinations of habitual residence are mixed questions of law and fact. Barzilay, 600 F.3d at 916. The district court's factual findings are reviewed for clear error, but its application of those facts to the law and its ultimate decision of habitual residence are reviewed de novo. Id.

In Barzilay we explained that "factors relevant to the determination of habitual residence [include] 'the settled purpose of the move from the new country from the child's perspective, parental intent regarding the move, the change in geography, the passage of time, and the acclimatization of the child to the new country.'" 600 F.3d at 918. Settled purpose "need not be to stay in a new location forever, but the family must have a 'sufficient degree of continuity to be properly described as settled.'" Id. We concluded that from the perspective of the child, who had lived in Missouri for five years, the settled purpose of the family's move was to remain there permanently despite an agreement by the parents to move the whole family to Israel should either spouse return. Id. at 919.

Here, the district court found that from DJ's perspective, the settled purpose of his relocation to Iowa was to reside there habitually. In reaching this decision, the court relied on Barzilay and a Third Circuit case discussing the element of settled purpose, Whiting v. Krassner, 391 F.3d 540 (3rd Cir. 2004). Whiting held that settled purpose does not require an intention to stay in a new location forever. Id. at 550. Rather, one's "purpose while settled may be for a limited period," and education could prompt such a move. Id. at 547 (quoting In re Bates, CA 122-89, High Court of Justice, Family Div'l Ct. Royal Courts of Justice, United Kingdom (1989)).

Martin argues that the district court gave too much weight to DJ's perspective in considering the move's "settled purpose" and too little to the Sterns' intent to return to Israel after Michelle finished her degree. Martin does not dispute that DJ is more accustomed to life in Iowa than in Israel, having lived five of his seven years there, or that he has formed meaningful relationships in Iowa. Instead, Martin argues that we should focus on the parents' intention to return to Israel rather than on DJ's acclimatization and perceptions. He cites a Ninth Circuit case that did not consider the settled purpose concept "very useful." Mozes v. Mozes, 239 F.3d 1067, 1074 (9th Cir. 2001). In contrast to our decisions in Barzilay and Silverman, the Mozes court held that without "settled parental intent, courts should be slow to infer from [a

child's] contacts that an earlier habitual residence has been abandoned." Id. at 1079 (emphasis added).

After examining the Hague Convention our court held in Barzilay that under it the settled purpose of a child's move must be viewed from the child's perspective. 600 F.3d at 918. Parental intent is not dispositive under our decisions. Id. at 920. The Ninth Circuit approach in Mozes has been criticized as undervaluing the perceptions and acclimatization of the child, who is "the very focus of the Convention's attention and the intended beneficiary of the Convention's protections." Stephen I. Winter, Home Is Where the Heart Is: Determining "Habitual Residence" Under the Hague Convention, 33 Wash. U. J.L. & Pol'y 351, 376 (2010). In rejecting Mozes, the Sixth Circuit characterized it as having "made seemingly easy cases hard and reached results that are questionable at best." Robert v. Tesson, 507 F.3d 981, 988 (6th Cir. 2007). The Third Circuit "examine[s] acclimatization and settled purpose 'from the child's perspective,'" considering parental intent only as it may "color [the child's] attitude to the contacts it is making." Karkkainen v. Kovalchuk, 445 F.3d 280, 292 (3d Cir. 2006).

The child's perspective should be paramount in construing this convention whose very purpose is to "protect children," Convention, 19 I.L.M. at 1501, by preventing their removal from "the family and social environment in which [their lives have] developed." Elisa Perez-Vera, Hague Conference on Private International Law, Explanatory Report, 3 Acts and Documents 426, 428 (1982). We decline to adopt a framework that would contradict our own precedent and frustrate the Convention's goal of 'deter [ring] parents from crossing borders in search of a more sympathetic court.'" Robert, 507 F.3d at 992.

The record here favors Iowa as DJ's habitual residence whether we emphasize DJ's perspective or that of his parents. The parties maintained no home in Israel after coming to Iowa, and Martin spent two months closing down his business before

rejoining his family in the United States. It appears that the family did intend to "abandon" Israel, even if one or both parents intended to return eventually. Any agreement of the pair to return to Israel would have involved staying in the United States for the indefinite amount of time it would take Michelle to finish her doctorate. The district court found that the parties' intent at the time of the move was to make Iowa DJ's habitual residence. It did not clearly err in doing so.

Martin also argues that the district court clearly erred in analyzing DJ's habitual residence as of May 2010, rather than in August 2009. Although Michelle had finished only her oral exams in August 2009, the parties stipulated that she finished her degree then. Michelle offered evidence at trial that she completed the degree in May 2010. Martin did not object to that evidence. Although "stipulations of fact fairly entered into are controlling and conclusive," Sims v. Wyrick, 743 F.2d 607, 610 (8th Cir. 1984), any difference in these dates is not material to the outcome of this case. By August 2009—over four years after the move to Iowa—all of the relevant factors already pointed toward the United States as DJ's habitual residence.

Under the Hague Convention "the court must focus on the child, not the parents, and [must] examine past experience, not future intentions," Silverman, 338 F.3d at 898. We conclude that the district court did not err in determining DJ's habitual residence. The judgment of the district court should therefore be affirmed.

_____