*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1489**

In re the Custody of:
S.K.S.  Christian Schut, petitioner,
Appellant,

vs.

Cynthia Schut,
Respondent

**Filed May 9, 2016
Affirmed in part, reversed in part, and remanded
Worke, Judge**

Washington County District Court
File Nos. 82-FA-14-5994, 82-FA-15-220

John DeWalt, Melissa Chawla, Minneapolis, Minnesota (for appellant)

Valerie Arnold, Bloomington, Minnesota; and

Harold Wingerd, St. Paul, Minnesota (for respondent)

Considered and decided by Schellhas, Presiding Judge; Worke, Judge; and Johnson, Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Appellant-father argues that the district court clearly erred by denying his petition for relief under the Hague Convention, misapplied the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), and clearly erred by awarding respondent-

mother child support. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS

In 2008, appellant-father Christian Schut and respondent-mother Cynthia Schut started residing together in Germany. Father worked at his family's paper mill. A.D., mother's daughter from a previous relationship, also resided with the parties. The parties subsequently married, and in October 2010, mother gave birth to the parties' daughter, S.K.S.

In November 2013, S.K.S. started kindergarten.[1] In March 2014, mother brought S.K.S. to a physician because she suspected that father sexually abused S.K.S. Child support services concluded that there was no evidence that father abused S.K.S.

On July 31, 2014, S.K.S. and mother left Germany to visit mother's family in Minnesota for four weeks. Mother and S.K.S. had previously traveled to the United States to vacation. Father planned to travel to Minnesota in mid-August, but mother told him to stay in Germany because she wanted to see her friends, and her family wanted time with S.K.S.

At the end of August, mother informed father that A.D. did not want to return to Germany, and that A.D.'s father would initiate custody proceedings to keep her in the United States. Father offered to travel to the United States to help, but mother told him that would only make things worse. Father booked a flight to the United States near the end of September, but mother informed him that he could not come to Minnesota.

---

[1] In Germany, children are permitted to attend kindergarten at an earlier age.

Mother told father that the children were in a protection program because of the prior sexual-abuse allegation.

On September 29, 2014, father flew to the United States. Father drove to a friend's residence in Woodbury where mother and S.K.S. were staying. Mother told father that he could not see S.K.S., and that he could not stay at the residence. Father stayed at a hotel until he returned to Germany on October 19, 2014.

While in Minnesota, father spoke to social services about the sexual-abuse allegations and reunited with S.K.S. on October 13. Mother also informed father that she could no longer stay at the friend's residence. On October 13, the parties signed a purchase agreement for a home in Woodbury and scheduled a closing date for December 15.

On October 16, father opened a checking account and deposited approximately $14,000. On October 17, father purchased a car to provide transportation for mother. On October 18, after deciding against purchasing the home in Woodbury, the parties signed a one-year lease agreement for a townhome in Woodbury and discussed the possibility of a rent-to-purchase option. The parties also visited and sought to enroll S.K.S. in a German-immersion school, hoping that S.K.S. would be able to enroll the following October. Father adjusted the parties' health insurance to provide coverage for S.K.S. and mother while they remained in the United States. On October 19, father returned to Germany.

On November 18, father returned to Minnesota and stayed at the parties' townhome with mother and the children. Shortly after his arrival, mother and the children left to spend Thanksgiving with her mother. Father was not invited to

3

Thanksgiving. On November 29, mother returned to the townhome with S.K.S. That night, mother accessed father's cell phone and discovered text messages from another woman. The next morning, mother left the townhome with S.K.S.

On January 16, 2015, father filed a Hague petition, asking the district court to order S.K.S.'s return to Germany. After an evidentiary hearing, the district court denied father's Hague petition. In May, father moved the district court to order immediate compliance with Minn. Stat. § 518D.204(d), including communicating with the German court having jurisdiction and authority over the matter for the purpose of arranging the transfer of the legal proceeding to Germany. In her counterpetition, mother requested child support. The district court denied father's motion and awarded mother temporary child support. Father appeals.

## D E C I S I O N

### *Hague petition*

Father argues that the district court should have granted his Hague petition. We review the district court's factual findings for clear error, "but its application of those facts to the law and its ultimate decision of habitual residence are reviewed de novo." *Stern v. Stern*, 639 F.3d 449, 451 (8th Cir. 2011).

The United States and Germany are signatories to the Hague Convention on the Civil Aspects of International Child Abduction, *opened for signature* Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (Hague Convention). The Hague Convention intends "to secure the prompt return of children wrongfully removed to or retained in any [c]ontracting state." Hague Convention art. 1. Congress implemented the Hague

4

Convention through the International Child Abduction Remedies Act (ICARA). *See* 22 U.S.C.A. §§ 9001–11 (2014).

To prevail, a petitioner must establish by a preponderance of the evidence that the child was wrongfully removed or retained. 22 U.S.C.A. § 9003(e). The petitioner must establish that: (1) the child was removed from the country of his or her habitual residence or retained in a country other than that of his or her habitual residence, (2) the removal or retention was in breach of the petitioner's rights of custody, and (3) the petitioner was exercising those rights at the time of removal or retention. Hague Convention art. 3; *see also Barzilay v. Barzilay*, 600 F.3d 912, 917 (8th Cir. 2010). A district court need not order a child's return if the respondent establishes that the petitioner consented to or subsequently acquiesced to the removal or retention that allegedly breached the petitioner's rights of custody. Hague Convention art. 13(a).

Father argues that the district court erred when it concluded that Germany was not S.K.S.'s habitual residence. "Habitual residence" is determined at the point in time immediately prior to a wrongful removal or retention. Hague Convention art. 3; *Barzilay*, 600 F.3d at 917. Thus, we first must determine when S.K.S. was wrongfully removed or retained.

Because father consented to mother and S.K.S. leaving Germany, this case does not involve a wrongful removal of the child from Germany. *See Walker v. Walker*, 701 F.3d 1110, 1114, 1118 (7th Cir. 2012) (stating that a wrongful removal did not occur when parents agreed to travel to the United States). Thus, if the Hague Convention is available to father as a basis for relief in this case, the retention of the child in the United

5

States must be a retention that, under the Hague Convention, is "wrongful." The date that a wrongful retention commenced is a question of fact upon which we typically defer to the district court. *Id.* at 1118.

Here, the district court did not find a date upon which the wrongful retention began. But father filed a custody petition in Washington County on December 10, 2014. In his petition, father argued that the parties are residents of Germany and that Germany is S.K.S.'s home country. Father also requested that the district court communicate with the German court and grant a temporary order to stay in effect until the issuance of an order by the German court. For purposes of our analysis, we assume that the wrongful retention began on December 10, 2014.[2]

Next, we must review the district court's determination that S.K.S.'s habitual residence immediately prior to the wrongful retention was not Germany. Neither the ICARA nor the Hague Convention defines "habitual residence." *See* 22 U.S.C.A. § 9002; Hague Convention arts. 1–5. But the Eighth Circuit stated that habitual residence

> must encompass some form of settled purpose. This settled purpose need not be to stay in a new location forever, but the family must have a sufficient degree of continuity to be properly described as settled. Additionally, the settled purpose must be from the *child's perspective*, although parental intent is also taken into account.

*Silverman v. Silverman*, 338 F.3d 886, 898 (8th Cir. 2003) (emphasis added) (quotations and citations omitted); *see Stern*, 639 F.3d at 452 (stating that "[t]he child's perspective

---

[2] Father argues that he commenced a child-custody proceeding in Germany in November 2014, but the current record does not contain sufficient documentation to confirm his assertion.

should be paramount"). "[O]ne spouse harboring reluctance during a move does not eliminate the settled purpose from the children's perspective." *Silverman*, 338 F.3d at 899.

Here, numerous factors support the district court's finding that Minnesota was S.K.S.'s habitual residence immediately before the wrongful retention. The parties purchased a car and signed a purchase agreement for a home, but ultimately decided to rent a townhome with an option to purchase. The parties opened a bank account and extended their health-insurance coverage. Father reassured mother that the parties' health-insurance coverage could be extended "again and again if necessary" while mother and S.K.S. remained in the United States. *See Mozes v. Mozes*, 239 F.3d 1067, 1082 (9th Cir. 2001) (stating that a child may lose habitual ties to a prior residence when a parent agrees that the child may live in another country on an open-ended basis, without clear limitations).

The parties also placed S.K.S. on the waiting list for a German-immersion school for the following year. *See Valenzuela v. Michel*, 736 F.3d 1173, 1179 (9th Cir. 2013) (stating that parents shared a settled intention to abandon Mexico when, in part, they had long-term plans to educate their children in the United States). These factors also support the conclusion, from S.K.S.'s perspective, that Minnesota was her habitual residence despite the fact that she had resided in Minnesota for approximately five months. *See Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995) (stating that six months, "a significant period of time for a four-year old," was sufficient to establish habitual residence).

Father had also assured mother that he was organizing matters in Germany, and he testified that the long-term plan was to live in the United States. *See Stern*, 639 F.3d at 453 (stating the parties abandoned their residence "even if one or both parents intended to return eventually"). Considering the totality of the circumstances in the eyes of S.K.S., these facts indicate a "settled purpose" and a "sufficient degree of continuity" to establish Minnesota as S.K.S.'s habitual residence. *See Sorenson v. Sorenson*, 559 F.3d 871, 873 (8th Cir. 2009).

Moreover, the above-mentioned factors also provide reasonable evidence to support the district court's conclusion that father and mother intended for S.K.S. to remain in Minnesota. The "shared intent" of the parties presents a question of fact that we review for clear error. *Stern*, 639 F.3d at 453. "If there is reasonable evidence to support the [district] court's findings of fact, a reviewing court should not disturb those findings." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999).

On this record, we conclude that the district court did not clearly err when it found that S.K.S.'s habitual residence is Minnesota, and we affirm the district court's decision to deny father's Hague petition.

## *UCCJEA*

Father argues that the district court erred when it concluded that the UCCJEA does not govern jurisdictional issues between domestic and foreign courts. This court reviews issues of statutory interpretation de novo. *City of E. Bethel v. Anoka Cty. Hous. & Redev. Auth.*, 798 N.W.2d 375, 379 (Minn. App. 2011). When a statute is unambiguous this court applies its plain meaning. *Id.* at 380.

8

The UCCJEA states that it provides a framework for district courts to determine which state has "jurisdiction" to make a custody determination. *See* Minn. Stat. §§ 518D.101–.317 (2014). "A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying sections 518D.101 to 518D.210." Minn. Stat. § 518D.105(a).

Here, father moved the district court to order immediate compliance with Minn. Stat. § 518D.204(d), "including the implementation of communication with the German [c]ourt having jurisdiction and authority over this matter for the purpose of arranging the transfer of this legal proceeding to Germany." The district court denied father's motion and stated:

> This [c]ourt finds that the provision of the UCCJEA cited by [father] does not govern the jurisdiction between this [c]ourt and any German [c]ourt because the UCCJEA does not govern jurisdictional issues between domestic and foreign [c]ourts but between states. Under the UCCJEA, "state" is defined as "a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States."

Based on the plain language of section 518D.105(a), the district court erred when it concluded that the UCCJEA does not govern disputes between domestic and foreign courts. Minn. Stat. § 518D.105; *see also Abu-Dalbouh v. Abu-Dalbouh*, 547 N.W.2d 700, 704 (Minn. App. 1996) (rejecting the argument that the UCCJEA's predecessor statute did not apply to international-custody disputes).

9

*Child support*

Father argues that the district court erred when it concluded that it had jurisdiction to award interim child support. Questions of jurisdiction and the interpretation of statutes are reviewed de novo. *Porro v. Porro*, 675 N.W.2d 82, 85 (Minn. App. 2004).

The Uniform Interstate Family Support Act (UIFSA) "addresses jurisdiction to modify and enforce child-support orders." *Wareham v. Wareham*, 791 N.W.2d 562, 564 (Minn. App. 2010) (quotation omitted); *see* Minn. Stat. §§ 518C.101–.905 (2014). In a proceeding to establish child support, a district court may exercise personal jurisdiction over a nonresident individual if "the individual submits to the jurisdiction of [Minnesota] by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction." Minn. Stat. § 518C.201(a)(2) (Supp. 2015). However:

> (a) A tribunal of this state may exercise jurisdiction to establish a support order if the petition or comparable pleading is filed after a petition or comparable pleading is filed in another state or a foreign country only if:
>
> (1) the petition or comparable pleading in this state is filed before the expiration of the time allowed in the other state or the foreign country for filing a responsive pleading challenging the exercise of jurisdiction by the other state or the foreign country;
> (2) the contesting party timely challenges the exercise of jurisdiction in the other state or the foreign country; and
> (3) if relevant, this state is the home state of the child.
>
> (b) A tribunal of this state may not exercise jurisdiction to establish a support order if the petition or comparable pleading is filed before a petition or comparable pleading is filed in another state or a foreign country if:

(1) the petition or comparable pleading in the other state or foreign country is filed before the expiration of the time allowed in this state for filing a responsive pleading challenging the exercise of jurisdiction by this state;

(2) the contesting party timely challenges the exercise of jurisdiction in this state; and

(3) if relevant, the other state or foreign country is the home state of the child.

Minn. Stat. § 518C.204 (Supp. 2015).

Here, father argues that section 518C.204 applies because a petition for support or a comparable pleading was filed in Germany before mother filed her petition or comparable pleading in Minnesota. Mother argues that section 518C.201 applies because a petition or comparable pleading was not filed in Germany. In its order, the district court concluded that it had jurisdiction without explicitly determining whether a petition or comparable pleading was filed in Germany. Based on this record, we cannot conclude whether a petition or comparable pleading was filed in Germany and, thus, remand to the district court for further proceedings.

Therefore, we affirm the district court's denial of father's Hague petition. But because the district court erred when it concluded that the UCCJEA does not apply to custody disputes between domestic states and foreign countries, we reverse and remand for further proceedings. We also remand for further proceedings to determine whether a Minnesota court has jurisdiction to order child support. On remand, the district court may, in its discretion, reopen the record for additional testimony and evidence regarding custody and support jurisdiction.

**Affirmed in part, reversed in part, and remanded.**

11