# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2517

_____

Lucas Alzu

*Plaintiff - Appellant*

v.

Amy Nichole Huff

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 20, 2025
Filed: January 23, 2026

_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.

_____

BENTON, Circuit Judge.

Lucas Alzu filed a Petition for Return of Child under the Hague Convention and the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.* Alzu alleged that Amy N. Huff, the child's mother, wrongfully removed the child from

his country of habitual residence.  The district court[1] denied the Petition.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Alzu, born in Argentina, has traveled extensively and has not lived there full-time since 2007.  Huff, born and raised in Missouri, began traveling internationally after earning a master's degree in 2017.

In December 2018, Huff and Alzu met at a Rainbow Gathering in Colombia (described as a weeks-long congregation where people around the world gather to live in peace while surrounded by nature).  They began a romantic relationship.  Huff became pregnant months later.

In July 2019, they were living in Colombia on a coffee ranch.  Their visas expired and could not be renewed.  They considered relocating to Mexico, Chile, or the United States to have the child, but Alzu could not legally enter those countries.  They chose Argentina, where his family lived.

Before the child's birth, Huff and Alzu planned to attend a Rainbow Gathering in Chile and travel through South America with the child in a van.  They were interested in continuing their "nomadic lifestyle," organizing and attending Rainbow Gatherings.

Alzu asserts that their plan was to make Argentina their "home base," where their travels would begin and end.  Huff testified that there was no discussion of making Argentina their "home base."  The district court found no evidentiary support for Alzu's testimony.

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

Leaving Colombia, Huff traveled to the United States to visit her family. Alzu traveled to Argentina, began working, and prepared for Huff's arrival. In December 2019, when Huff was six months pregnant, she moved in with Alzu at his mother's house.

In February 2020, Huff moved out because Alzu physically assaulted her, and she no longer felt comfortable at his family's home. Huff first moved into an apartment, then signed a three-year lease for a house, where Alzu eventually joined her.

The child was born on March 4, 2020. Huff planned to return to the United States with him, but one week after his birth, COVID-19 restricted all travel. The restrictions also prevented travel to Chile for the Rainbow Gathering.

The child spent time with Alzu's family on various occasions, including a Christmas gathering (which Alzu did not attend).

In February 2021, Huff and Alzu ended their relationship. They agreed to share custody of the child, splitting their time 50/50. Huff moved out of the rental home, terminated the lease, and was granted an order of protection against Alzu.

In November 2021, travel restrictions ended. Huff stayed in Argentina because Alzu, fearing she would not return, refused to allow the child to leave the country. The Argentinian family court granted Huff permission to travel internationally with the 22-month-old child for 40 days over the Christmas holiday.

Huff assured Alzu and his family she would return to Argentina. But she traveled to the United States, remained there, and began full-time employment. Alzu maintained contact with the child but has had no in-person visits. He is unable to legally enter the United States.

Alzu filed a Petition for Return of Child. The district court bifurcated the proceedings to determine the threshold issue of the child's habitual residence, deferring consideration of Huff's affirmative defenses. Following a two-day evidentiary hearing, the court dismissed the Petition—finding that Alzu had not established that Argentina was the child's habitual residence. Alzu appeals.

**II.**

"The Hague Conference on Private International Law adopted the Hague Convention in 1980 'to address the problem of international child abductions during domestic disputes.'" ***Monasky v. Taglieri***, 589 U.S. 68, 71 (2020), *quoting **Lozano v. Montoya Alvarez***, 572 U.S. 1, 4 (2014) (internal quotation marks omitted). The Convention, implemented in the United States by the International Child Abduction Remedies Act, 22 U.S.C. § 9001 *et seq.*, addresses "whether a child has been wrongfully removed from the country of its habitual residence or wrongfully retained in a country other than that of its habitual residence." ***Barzilay v. Barzilay***, 600 F.3d 912, 916–17 (8th Cir. 2010). "The petitioner bears the burden of proving 'that the child has been wrongfully removed or retained within the meaning of the Convention.'" ***Id***. at 917, *citing* **42 U.S.C. § 11603(e)(1)(A)**.

The determination of a child's habitual residence is a mixed question of law and fact. ***Monasky***, 589 U.S. at 84. "Once the trial court correctly identifies the governing totality-of-the-circumstances standard, . . . [t]he habitual residence determination . . . should be judged on appeal by a clear-error review standard deferential to the factfinding court." ***Id.***; *See also **Tsuruta v. Tsuruta***, 76 F.4th 1107, 1111 (8th Cir. 2023) (same).

The district court applied the correct standard. This court reviews its determination for clear error.

"[L]ocating a child's home is a fact-driven inquiry[.] [C]ourts must be 'sensitive to the unique circumstances of the case and informed by common sense.'"

-4-

*Monasky*, 589 U.S. at 78, *citing* **Redmond v. Redmond**, 724 F.3d 729, 744 (7th Cir. 2013). "For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant. Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations. No single fact, however, is dispositive across all cases." ***Id.***

Alzu argues that the district court misapplied the totality-of-the-circumstances test by treating the parents' travel intentions as determinative, rather than considering the child's acclimatization in Argentina. But just because the court did not weigh the factors as Alzu prefers does not mean it failed to consider them.

The district court considered the totality-of-the-circumstances—weighing the parents' intentions and connection to Argentina; their immigration statuses; the child's age; residency; and family relationships; and the effects of COVID-19— applying "maximum flexibility" to act based on the precise scenario before it, informed by common sense. ***Id.*** at 79. The district court recognized that "no one factor is determinative," emphasizing the "unusual circumstances," the "unique scenario of the parties' nomadic lifestyles," and the "world-wide travel restrictions imposed by the COVID-19 pandemic." Contrary to Alzu's assertion, the court did not treat the parents' travel intentions as dispositive.

Invoking *Sorenson v. Sorenson*, 559 F.3d 871 (8th Cir. 2009), Alzu believes that Argentina must be the child's habitual residence because he lived there exclusively for the first 22 months of his life. *See* **Sorenson**, 559 F.3d at 873 ("A person may have only one habitual residence . . . ."), *quoting* **Silverman v. Silverman**, 338 F.3d 886, 898 (8th Cir. 2003) (en banc).

Exclusive residence in a single country, however, does not alone establish habitual residence. *See generally* **Monasky**, 589 U.S. at 81 ("An infant's 'mere physical presence,' we agree, is not a dispositive indicator of an infant's habitual

residence. But a wide range of facts . . . including facts indicating that the parents have made their home in a particular place, can enable a trier to determine whether an infant's residence in that place has the quality of being 'habitual.'"). The relevant inquiry is whether the petitioner has met his burden of establishing where the child habitually resides, not whether the district court could identify an alternative residence. *See* ***Pope v. Lunday***, 835 F. Appx. 968, 971 (10th Cir. 2020) ("The Convention does not require a district court to determine where a child habitually resides . . . [but] *whether* the child habitually resides in the location that the petitioner claims."). Considering the totality-of-the-circumstances, the district court correctly found that Alzu failed to establish Argentina as the child's habitual residence.

The district court did not commit clear error.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____